UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

JESSICA ANNA COCO,

               Appellant,

  v.

NEW JERSEY HIGHER EDUCATION STUDENT ASSISTANCE AUTHORITY,

               Appellee

Civil Action No. 07-2725(KSH)

**OPINION**

**KATHARINE S. HAYDEN, U.S.D.J.**

      In an adversarial proceeding, the bankruptcy court granted summary judgment in favor of New Jersey Higher Education Student Assistance Authority ("NJHESAA"), finding that Jessica Anna Coco's student loan debt could not be discharged as an "undue hardship" pursuant to 11 U.S.C. § 523(a)(8). Coco, appearing pro se, appeals to this Court. For the reasons stated below, the Court affirms.

**BACKGROUND**

      Coco attended New York University between 1989 and 1992 and earned an Associate of Arts degree in the General Studies program and a Bachelor of Arts degree in History and English Literature. (Def. Br. 5.) She took out eight federal Stafford loans totaling $25,760.00 for her educational expenses. (Adversarial Proceeding 05-6121(NLW) ("AP"), D.E. 11 (Statement of Undisp. Mat. Facts ¶ 2, 9).) NJHESAA was the guarantor on those loans. (Statement of Undisp. Mat. Facts ¶ 2.) In 1997, Coco defaulted on her loan payments, and NJHESAA repurchased the loans pursuant to her promissory notes. (Statement of Undisp. Mat. Facts ¶ 8.) She was in default for a principal amount of $37,503.75, interest accrued from June 26, 1997 until September 12, 2006

1

totaling $23,929.59, and attorney's fees totaling $10,670.07. (Statement of Undisp. Mat. Facts ¶ 12.) Coco now owes NJHESAA $71,648.45 plus costs and interest dating from February 9, 2007.[1] (D.E. 1-3 (Order appealed).)

In October, 2005, Coco filed a voluntary Chapter 7 petition for bankruptcy. (Bank. Pet. # 05-50484(NLW), D.E. 1.) Under 11 U.S.C. § 523(a)(8), student loan debt is not subject to discharge absent an undue hardship. See Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 450 (2004)("Unless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt.").

Coco initiated an adversarial proceeding pursuant to Fed. R. Bank. P. 7007 by filing a complaint in the bankruptcy court. (AP D.E. 1.) After Coco moved for default judgment, NJHESAA filed an answer. (AP D.E. 4, 6.) NJHESAA moved for summary judgment, arguing that Coco failed to meet the standard for discharging her student loans owed to NJHESAA. (AP D.E. 11.) Judge Winfield conducted oral argument on the motion, focusing on whether Coco had met the requirements for a discharge under the test adopted by the Third Circuit in Pa. Higher Education Assistance Agency v. Faish (In re Faish), 72 F.3d 298, 305 (3d Cir. 1995), where the court held that the debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Id. at 304-05 (relying on Brunner v. N.Y. State Higher Educ. Serv. Corp., 831 F.2d 395, 396 (2d Cir. 1987))(hereinafter referred to as "the Brunner test").

The bankruptcy court found Coco met the first prong of the Brunner test, but barely met the second prong. It was Coco's "utter failure to meet the third prong" that Judge Winfield focuses on in

---

[1] Coco also filed an adversarial proceeding against New York University to discharge the loan it issued. (R. at 22:1-12.) That loan is not at issue on this appeal.

her oral opinion from the bench. (R. at 18:13.)[2] She found that Coco had not made good faith efforts to repay her indebtedness because she had only made one $100 payment over the ten years NJHESAA had the loan, and had failed to participate in any kind of repayment program. As a consequence, Judge Winfield granted summary judgment in favor of NJHESAA. This appeal followed.[3]

**STANDARD**

A district court has jurisdiction over an appeal from a bankruptcy court's final judgment pursuant to 28 U.S.C. § 158(a). The district court reviews findings of fact for clear error and conclusions of law de novo. In re Schick, 418 F.3d 321, 323 (3d Cir. 2005). "The standard for determining a motion for summary judgment is set forth in Fed. R. Civ. P. 56, which is made applicable to adversary proceedings through Fed. R. Bankr. P. 7056." Fabrizio v. U.S. Dep't of Educ. Borrower Servs. Dep't Direct Loans (In re Fabrizio), 369 B.R. 238, 242 (Bankr. W.D. Pa. 2007). Summary judgment is appropriate where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). As Judge Winfield noted, "it is incumbent upon plaintiff debtor to demonstrate by something other than conclusory allegations that in fact there is a factual issue. You don't have to prove your case, you just have to show [the court] that there's a factual issue." (R. at 15:11-14.)

**DISCUSSION**

---

[2] R. refers to the transcript of United States Bankruptcy Court Judge Novalyn Winfield's hearing on the summary judgment motion conducted on February 26, 2007.

[3] The Court has reviewed the documents included in the Record on Appeal, which include exhibits attached to Coco's opposition to the summary judgment motion. (AP D.E. 15.) These documents include extensive information about her medical conditions, doctor's letters about her condition and ability to work, medical bills, her monthly expenses, estimates of her payments under the Ford income contingent repayment program[see infra], and information about poverty in New Jersey.

As stated in her Record on Appeal, the sole issue Coco raises is this: "The Failure for Plaintiff to Meet the Third Prong of the Brunner-Faish Test is erroneous." (D.E. 2 (Designation of Record on Appeal).) In Faish, the Third Circuit announced that as to dischargeability of student loans:

> Brunner now provides the definitive, exclusive authority that bankruptcy courts must utilize to determine whether the "undue hardship" exception applies. Student-loan debtors have the burden of establishing each element of the Brunner test. All three elements must be satisfied individually before a discharge can be granted. If one of the requirements of the Brunner test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability. Equitable concerns or other extraneous factors not contemplated by the Brunner framework may not be imported into the court's analysis to support a finding of dischargeability.

Faish, 72 F.3d at 306. This test "safeguards the financial integrity of the student loan program by not permitting debtors who have obtained the substantial benefits of an education funded by taxpayer dollars to dismiss their obligation merely because repayment of the borrowed funds would require some major personal and financial sacrifices." Id.

Judge Winfield determined that Coco was not entitled to an undue hardship discharge based on Coco's "utter failure to meet the third prong . . . [that] . . . the debtor has made a good faith effort to repay the loans." (R. at 18:12-16.) Coco had not "tried any other solution other than forbearance and bankruptcy and seeking an undue hardship discharge under the Bankruptcy Code." (R. at 20:17-19.) The court gave "extraordinary significance" to the fact that Coco made only one $100 payment during the ten years NJHESAA had the loan. (R. at 19:5-9.) These underlying facts are not in dispute.

In her analysis, Judge Winfield relied on Pobiner v. Educational Credit Management Corp. (In re Pobiner), 309 B.R. 405 (Bankr. E.D.N.Y. 2004), which described good faith as in part "measured by a debtor's effort, or lack thereof, to negotiate an alternative repayment plan." Id. at 421. The debtor there had failed to avail himself of the Ford income contingent repayment

4

program,[4] which the decision considered in finding a lack of good faith. Id. Judge Winfield also relied on Kelly v. Sallie Mae Serv. (In re Kelly), 351 B.R. 45 (Bankr. E.D.N.Y. 2006), which determined that the debtor did not act in good faith because she did not apply for the Ford program. Id. at 55-56. That court noted that good faith requires "a history of effort to achieve repayment." Id. at 55 (internal citations omitted). Educational Credit Management Corp. v. Frushour (In re Frushour), 433 F.3d 393 (4th Cir. 2005), also cited by Judge Winfield, held that while not always dispositive, a "debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component of the good-faith inquiry," showing that "the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances." Id. at 402. Based on this authority and the fact that Coco made only a single payment over the stretch of years, Judge Winfield concluded that Coco failed to qualify for a hardship exception.

Coco raises four points in her papers. She argues the court improperly considered her decision to provide financial help to an unrelated dependent in deciding the good faith prong. (Coco Br. 3-5.) She argues that it is impossible for her to make payments on her loan because her chronic condition of osteomyeltits prevents her from maintaining a minimum standard of living, and as a result she has no money with which to pay her loans. (Coco Br. 5-7.) She also disputes Judge Winfield's placing legal significance on her failure to participate in the Ford income contingent repayment program. (Coco Br. at 9-10.) Finally, she argues the bankruptcy court proceedings were biased against her. (Coco Br. 1-2.) Each of these points will be addressed below.

A. Coco's Decision to Care for Chance Bishop

---

[4] The William D. Ford Federal Direct Loan program provides an income contingent repayment plan which gives borrowers a repayment schedule of 300 months with minimal payments based upon income, with the debt discharged at the end of the 300 month period. Newman v. Educ. Credit Mgmt. Corp. (In re Newman), 304 B.R. 188, 194 (Bankr. E.D. Pa. 2002). The remaining debt at the end of the period is subject to taxation. Id. at 195.

Coco argues that the bankruptcy court improperly considered her decision to treat Chance Bishop ("Bishop"), an unrelated adult, as a dependent. Apparently he has been living with Coco while she cares for him during a long illness. (Coco Br. 4.) Coco claims that Judge Winfield held this against her. But a reading of Judge Winfield's decision shows otherwise. She mentions Bishop once, and in this context:

> The Court in Educational Credit Management v. Waterhouse [333 B.R. 103, 112 (W.D.N.C. 2005)] spoke of it as, "The debtor must do everything within their power to improve their financial situation before they can show a current inability to maintain a minimal standard of living." That presupposes that you look at the expense side as well as the income side. For example, most recently while it's laudable, Ms. Coco, that you have taken in this other gentleman, in fact, you're not in any financial circumstances to be doing that and that can be considered.
>
> But I'll give you the first prong, because I think your history of employment demonstrates a history of underemployment though it's not clear to me that you've raised a sufficient factual demonstration that in fact that underemployment wasn't to some degree within your control.

(R. at 17:13-18:1.) As can be seen, Judge Winfield points out that Coco does not have the wherewithal to take in Bishop, and relies on the cited case in finding that Coco's decision to do so demonstrates she is not doing everything possible to improve her financial situation. This was not "holding against Coco" her decision; rather, Judge Winfield was examining the consequence and finding it relevant.

B. Coco's Claim that Any More Repayment than Shown is Impossible

Coco claims that it is impossible for her to pay back her loan. Directly addressing Judge Winfield's findings, she claims that the bills for treating her medical condition leave her with no money with which to pay her loans. (Coco Br. 6-7.) She also claims she could not possibly get better employment than she has now because of her medical conditions. (Coco Br. 7-9.)

Coco's arguments on this issue are significantly undercut by Third Circuit precedent. "The debtor may not willfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.'" Faish, 72 F.3d at 305. And, "[a] debtor seeking to

6

discharge a student loan obligation on the ground that barring him from doing so would result in undue hardship must prove that he or she made good faith efforts to repay the loan over the which the debtor filed for bankruptcy." Pelliccia v. U.S. Dep't of Educ., 67 Fed. Appx. 88, 90 (3d Cir. 2003)(remanding case to bankruptcy court to decide if Pelliccia made good faith effort to repay his loans over entire repayment period). Lack of payment is not necessarily dispositive, see Jara v. N.J. Higher Educ. Student Assistance Authority (In re Jara), No. 04-47384(RTL), 2006 Bankr. LEXIS 2597, *17, 2006 WL 2806556, *6 (Bankr. D.N.J. Sept. 28, 2006) ("a lack of payment does not by itself preclude a good faith finding"), but Coco's position that she cannot pay the loans, there is no possible way she can pay the loans, and discharge is the only way she can get relief from her debt falls short of an affirmative showing that she has tried. Coco's demand that the Court accept her "impossibility" argument fails to accommodate the distinction that the law makes for student loan dischargeability. A practical reading of the cases shows that they put the burden on the debtor to show what steps or methods she has used to try to pay her debt. See Pelliccia, 67 Fed. Appx. at 90. A debtor cannot simply throw his or her hands up in the air and claim, "I can't pay!" Moreover, the record shows that Coco was making payments on her NYU loans. (Coco Reply Br. 11.) The one payment on the NJHESAA loan does not show the requisite good faith under the law.

      Coco makes four other arguments regarding her ability to repay her loans. She makes an equal protection argument, claiming that the government is treating student loan debtors differently from other debtors in bankruptcy. (Coco Br. 15.) Congress, pursuant to its bankruptcy powers under article I, section 8, clause 4, has the power to distinguish among classes of debtors. See Ry. Labor Executives' Ass'n v. Gibbons, 455 U.S. 457, 470 (1982). Moreover, a "bald assertion that some persons may be treated differently under the statute is simply insufficient to establish a claim for a Constitutional violation." McClain v. Am. Student Assistance (In re McClain), 264 B.R. 230, 233 (Bankr. D.N.H. 2001)(finding debtor failed to demonstrate that section 523(2)(8) violated equal protection). Coco has not made any factual allegations, or provided any legal authority, to

support her equal protection claim. She also argues, without providing factual information or authority, that because her ten-year loan term is over, she should not be obligated to repay the debt. (Coco Br. 16.) The argument is not supported or persuasive. She also claims that the student loan industry engaged in predatory practices by lobbying Congress retroactively to change the discharge requirements for student loans after students signed their promissory notes, violating the ex post facto clause of article I, section 9 of the United States Constitution. (Coco Br. 18-19.) Her argument fails for two reasons. First, section 523(a)(8) was amended in 1976 to exempt from discharge student loans provided by the states. Hood, 541 U.S. at 449. Coco began her education in 1989, well after the amendment was passed. Additionally, the Supreme Court has long held that the ex post facto clause of the Constitution only applies to criminal or penal laws. See, e.g., Collins v. Youngblood, 497 U.S. 37, 41 (1990); Calder v. Bull, 3 U.S. (3 Dall.) 386, 390-92 (1798).

Coco also claims that Judge Winfield took into account her ratio of student loan debt to overall debt in deciding whether she acted in good faith. A bankruptcy court may examine a debtor's ratio of student debt to overall debt to determine if a debtor's sole purpose in filing for bankruptcy is to discharge her student loans. See, e.g., Pobiner, 309 B.R. at 421. Judge Winfield had the authority to do so, but a review of her decision indicates that in fact she did not consider the debt ratio in deciding the good faith issue. The contention is without merit.

C. Coco's Decision Not to Establish a Repayment Protocol (Ford Program)

Coco's third claim is that it would be futile for her to try any repayment options, including the Ford program, because they would not help her eliminate her debt. She characterizes the Ford program as "a racket perpetuated on unsuspecting student debtors." (Coco Br. 11.) She complains that the program would require her to make payments of $214 a month and that at the conclusion of the 25 year repayment period, she would have to pay tax on the remaining balance. (Coco Br. 10-11.) She contends that other repayment plans will require making payments in excess of what she can afford to pay. (Coco Br. 9.)

A court can consider whether a debtor made any effort to consolidate her loans before filing for bankruptcy when deciding if she acted in good faith. Pelliccia, 67 Fed. Appx. at 91. The William D. Ford Federal Direct Loan program allows certain holders of student loans to consolidate their loans into one direct loan and then select among a variety of repayment options. Newman v. Educ. Credit Mgmt. Corp. (In re Newman), 304 B.R. 188, 194 (Bankr. E.D. Pa. 2002). One repayment method is an income contingent repayment plan, which gives the borrower this option:

> [A] borrower may qualify for an Income Contingent Repayment Plan, where the amount of the required monthly payment is recalculated yearly based on the borrower's Adjusted Gross Income, family size and the "poverty guidelines" promulgated by the United States Department of Health and Human Services. The repayment period covers a maximum of 300 months. The amount of payments are dependent on the borrower's income and payment may not be required at all during times when the borrower has little income. The balance remaining after the 300-month period is deemed forgiven.

Id. (quoting In re England, 264 B.R. 38, 44 (Bankr. D. Idaho 2001)). Payments are based on the individual's income level, which is reviewed periodically. Id. The loan payments are spread out over 25 years, and in the 25th year "the unpaid balance may be 'discharged' by the Secretary, with this discharge considered by the IRS as a taxable event." Id. at 195. Courts have held, as Judge Winfield acknowledged, that the failure to make efforts to consolidate payments is one factor in the good faith inquiry, but not the dispositive factor. See, e.g., Fabrizio v. U.S. Dep't of Educ. Borrower Servs. Dep't Direct Loans (In re Fabrizio), 369 B.R. 238, 245 (Bankr. W.D. Pa. 2007)("A debtor's effort to seek out loan consolidation options that make the debt repayment obligation less onerous is an important component of the "good faith repayment" inquiry. Although not dispositive, it can support a finding that the Debtor takes his loan obligations seriously and doing his utmost to repay the loan despite the Debtor's unfortunate financial circumstances.") The court found:

> The debtor cited the Court to a number of cases that I think could fairly be characterized that the refusal to attempt the Ford program per say [sic] is not a lack of good faith. But when coupled with the circumstances such as those that surround this case, that is, a debtor that's never meaningfully made one effort to repay

9

>student loan debt, I think here when the debtor declines to attempt the Ford program for income contingent repayment program I think that is dispositive.

(R. at 19:18-25.) What was dispositive for Judge Winfield in her decision that Coco had failed to show good faith was not whether the Ford program was effective, but Coco's refusal to participate in it. (R. at 19:12-17.) The Ford program gives participants 25 years to repay; if Coco chooses to employ another means of repayment because she does not like that program's terms, she obviously has that option. What she must show is effort, and an attack on the Ford program does not suffice.

    D.  <u>Coco's Remaining Arguments</u>

Coco also argues that there were procedural flaws in the adversarial proceeding in the bankruptcy court. She argues that Judge Winfield improperly allowed NJHESAA to file an untimely summary judgment motion, claiming this was "a deliberate attempt to try to win by default. It is obvious Creditor had no intentions on filing a Motion for Summary Judgment until the Creditor had learned of the Debtor's mother's sudden and unexpected death." (Coco Reply Br. 1.) Her assertion is bald speculation and meritless, and she had sufficient time, some four months, to prepare for the motion hearing.

Coco asserts that Judge Winfield showed bias by "convincing" New York University to file for summary judgment in its adversarial proceeding with Coco. Judge Winfield made an observation at the February 27 hearing that the case appeared ripe for a summary judgment motion. (R. at 21:25-22:18.) There is nothing improper about a judge inviting motion practice as part of her assessment of the posture of a lawsuit she is sitting on, nor does such an observation predict the outcome. Judge Winfield was demonstrating ordinary and effective case management.

Coco also argues that she is entitled to a trial so she can present all of her proofs. But a properly presented motion requires the plaintiff to present "specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324 (internal quotations omitted). Coco also argues that Judge Winfield made credibility determinations that denied her right to trial. A review of the

transcript of the decision does not support Coco: Judge Winfield based her decision regarding good faith on two undisputed facts: (1) Coco made one $100 payment in ten years and (2) Coco never made an effort to enter a repayment program.  Judge Winfield did not improperly weigh evidence; she applied appropriate law to facts not in dispute.

Finally, Coco argues that courts are biased toward pro se litigants.  She claims that she could not adequately prepare for the hearing the way a lawyer would, that she is not familiar with court rules and procedures, and that judges discriminate against pro se litigants, saying "I have heard many judges state they can't stand Pro Se litigants." (Coco Br. 2.)  She argues that because she is pro se, she is automatically at a disadvantage.  But Coco has produced competent papers and her arguments do not demonstrate prejudice.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Judge Winfield did not err in concluding Coco was not entitled to discharge her student loans under section 523(a)(8) because she failed to meet the third prong of the Brunner test.  The Court will affirm the bankruptcy court's decision to grant summary judgment in favor of NJHESAA.  Coco's appeal is denied.  (D.E. 1.)  An appropriate order will be entered.


Dated: 5/28/08                                             /s/Katharine S. Hayden
                                                           Katharine S. Hayden
                                                           United States District Judge